James R. PYNE and Lydia MacFunn Pyne, as Co-Executors under the Will of H. Rivington Pyne, Jr., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 84-0002-B.

United States District Court, D. Maine.

June 27, 1986.

Jotham D. Pierce, Everett P. Ingalls, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for plaintiffs.

Timothy C. Woodcock, Asst. U.S. Atty., Bangor, Me. and Paul D. Barker, Thomas Clark, Trial Attys., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM DECISION AND ORDER

CYR, Chief Judge.

This is an action for refund of $78,900 in estate taxes previously paid to the United States. The court has jurisdiction under 28 U.S.C. §§ 1340 & 1346(a)(1). The cross-motions for summary judgment raise the question whether the Internal Revenue Service [IRS] assessment of taxes against the estate of H. Rivington Pyne, Jr., properly reduced the amount of the applicable marital deduction by the amount of Maine state inheritance tax attributable to the marital gift.

The pertinent facts are undisputed. H. Rivington Pyne, Jr., of Bremen, Maine, died on June 7, 1980. In his will, executed on November 3, 1978, he gave his wife all of his real and tangible personal property, as well as "one-half of" the residuary estate. The remainder of his residuary estate was to be placed in trust for the benefit of his wife. On June 4, 1980, three days prior to his death and while hospitalized in Boston, Massachusetts, Pyne executed a codicil which changed the disposition of his residuary estate so as to give his wife

*an amount which when added to the total of all other amounts allowed as a marital deduction* in the Federal Estate proceeding in my estate, including in respect of interests in property which pass or have passed otherwise than under my Last Will and Testament, *will equal the maximum marital deduction allowable in determining the Federal Estate Tax imposed upon my estate.*

(Emphasis added.) The rest of the residuary estate was placed in trust for the bene-

fit of his wife during her lifetime, with the principal to be distributed to their children upon her death.

The IRS and the co-executors of the will agreed that Pyne's gross estate had a value of $2,663,777.62 and that the value of the adjusted gross estate was $2,601,398.57. In auditing the estate tax return, the IRS concluded that the total marital gift amounted to one-half of the adjusted gross estate, or $1,300,699.29, but that the marital *deduction* to be applied for purposes of federal estate taxes was the aforesaid amount minus the amount of Maine inheritance taxes attributable to that portion of the estate ($160,000). As the co-executors had claimed a marital deduction equal to one-half of the adjusted gross estate, the IRS assessed an estate tax deficiency of $58,558.73, plus interest, for a total of $78,900, which was paid by the estate on February 23, 1983. A claim for refund of the amount of the deficiency was disallowed by the IRS.

Section 2056(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 2056) allows a deduction, for purposes of determining the value of the taxable estate, equal to "the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." Defendant does not dispute that the property passing to Pyne's surviving spouse qualifies for the marital deduction, which was limited in 1980 to the greater of 50 percent of the value of the adjusted gross estate or $250,000. *See* 26 U.S.C. § 2056(c)(1)(A) (1978).

 However, 26 U.S.C. § 2056(b)(4)(A) provides that for purposes of determining the marital deduction the value of any interest passing to the surviving spouse must be reduced by any estate or state inheritance taxes payable out of that interest.[1] Thus, the value of the marital deduction is the net value of the interest passing to the surviving spouse reduced by the amount of state inheritance taxes charged against that interest. *Estate of Wycoff v. Commissioner*, 506 F.2d 1144, 1148–49 (10th Cir.1974), *cert. denied sub nom. Zion First National Bank v. Commissioner*, 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975). Whether state inheritance taxes are chargeable to the surviving spouse's share in property passing upon the decedent's death is determined by state law. *See Riggs v. Del Drago*, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); *Boston Safe Deposit & Trust Co. v. Commissioner*, 345 F.2d 625 (1st Cir.1965).

The issue thus presented is whether Maine law requires state inheritance taxes to be charged against the marital gift, rather than against the non-marital gift portion of the residuary estate.[2]

The critical statutory provision is 36 M.R.S.A. § 3582 (1978), which, in 1980,[3] provided as follows:

§ 3582. **Tax deducted before delivery**

An executor, administrator or trustee holding property subject to the [inheritance] tax imposed by chapters 551 to 567 shall deduct the tax therefrom or collect it from the legatee or person entitled to said property; and he shall not deliver property or a specific legacy subject to said tax until he has collected the tax thereon. An executor or administrator shall collect inheritance taxes due upon real property passing by inheri-

---

1. Section 2056(b)(4)(A) provides:
(4) Valuation of interest passing to surviving spouse. In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—
(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest;....

2. The will codicil places the remainder of the residuary estate in trust for the benefit of testator's wife during her lifetime, with the remaining principal to be given to their children upon her death.

3. The statute was amended, effective January 1, 1981, in respects not pertinent here.

tance or will, which is subject to said tax from the heirs or devisees entitled thereto, and he may be authorized to sell said real property in the manner prescribed by section 3687, if they refuse or neglect to pay said tax. An executor, administrator or trustee upon payment of any tax assessed under section 3634 or compromised under section 3635 shall, *unless otherwise provided in the instrument creating the taxable interests, deduct the tax so paid from the whole property devised, bequeathed or given.*

(Emphasis added.)

■ Plaintiffs, the co-executors of the will, agree with defendant that the Maine inheritance tax ordinarily would be chargeable against and deducted from the particular devise or bequest (here the marital gift) upon which it was assessed, prior to its distribution. But plaintiffs argue that this testator "otherwise provided" in his will and codicil by expressing an intention that all inheritance taxes be paid from the nonmarital portion of the residuary estate rather than from the marital gift itself. Plaintiffs insist that this expression of the testator's intent is contained in the codicil directive that the total marital gift (including both the specific gift of all real and personal property and the gift of a nonspecific portion of the residuary estate) "equal the maximum marital deduction allowable in determining the Federal Estate Tax." Plaintiffs' reasoning is as follows. Since the marital deduction for the estate could be maximized only if the state inheritance tax assessed to the estate were charged to the portion of the residuary estate not included within the marital gift—because otherwise the "value" of the marital gift (and consequently the resulting marital deduction) would be less—the giving of an amount "equal to the maximum marital deduction allowable in determining the Federal Estate Tax imposed upon my estate" clearly evinces an intent that the inheri-

tance tax be shifted from the marital gift to the remaining portion of the residuary estate.

A recent Maine decision, *Estate of Cushman*, 501 A.2d 811, 813 (1985), summarizes the applicable principles of will construction:

The cardinal rule of will construction is to give effect to the intent of the testator, discerned within the four corners of the instrument, bearing in mind that such intention must be related to the time when that instrument was executed. *See In Re Estate of Thompson*, 414 A.2d 881, 887 (Me.1980); *Maine National Bank v. Petrlik*, 283 A.2d 660, 664 (Me. 1971). In the event of doubt or ambiguity, the court may consider circumstances outside the will for the purpose of ascertaining the testator's probable intention so long as the circumstances were known to him and may be deemed to have been in his mind at the time the will was executed. *Id.; see also Ziehl v. Maine National Bank*, 383 A.2d 1364, 1369 (Me.1978).

Plaintiffs find support for their position in decisions applying the law of other states. In *Putnam v. Putnam*, 366 Mass. 261, 316 N.E.2d 729 (1974), the testator established a marital trust of "that fractional share of my residuary estate ... which will equal the maximum marital deduction allowable in determining the Federal Estate Tax by reason of my death." 316 N.E.2d at 732. The Massachusetts Supreme Court held that this language "standing alone showed that [the testator] intended to have his estate utilize the maximum permissible marital deduction in computing the Federal Estate tax payable on his death." *Id.* at 734. Therefore, in accordance with the testator's intent, the state inheritance taxes were to be paid from the residuary trust rather than the marital trust. *Id.* at 737.[4]

4. The *Putnam* court reached this conclusion even though a tax apportionment provision in the will provided that "[i]nheritance taxes on future interests in any trust hereunder paid after the establishment of the trust shall be paid from the principal of the trust with respect to which the tax is assessed or imposed." Notwithstanding this provision, which the court recognized was "irreconcilable" with an intent to obtain the maximum marital deduction by shifting

Defendant argues that *Putnam* is inapposite because the applicable Massachusetts law provided that taxes otherwise payable out of the residuum could not be charged against the property passing to the surviving spouse to the extent that the share of the residuum qualified for the marital deduction; whereas, Maine law requires that the inheritance tax be deducted from the property bequeathed, unless otherwise provided in the will. However, the *Putnam* decision was not based on this aspect of Massachusetts law, but was predicated upon the court's view of the intent of the testator as expressed in the will. Thus, *Putnam* is clear authority for plaintiffs' contention as to the true intent of the testator in this case, which was expressed in nearly identical language in the codicil.

Four years after its *Putnam* decision, the Massachusetts Supreme Judicial Court construed a will which created a marital trust of "exactly the sum necessary to obtain the maximum marital deduction in determining the Federal Estate Tax in my estate," and held, in accordance with *Putnam*, that the language "necessarily implies an intention to preclude the executors of the estate from charging any taxes or expenses to the marital trust property." *First National Bank of Boston v. First National Bank of Boston*, 375 Mass. 121, 375 N.E.2d 1185, 1187 (1978).

Federal courts applying Minnesota and New Jersey law have reached conclusions similar to that in *Putnam*. In *First Trust Co. of St. Paul v. United States*, 402 F.Supp. 778, 782–83 (D.Minn.1975), a taxpayer's suit for refund of estate taxes, the court had before it a will which established a revocable trust in the following language:

> It is my desire to take maximum advantage of the "marital deduction," by which is meant the deduction in computing federal estate taxes ... provided in [§ 2056] of the Internal Revenue

Code.... To that end, the residue of the property in this trust shall be divided into two portions: The First Portion shall consist of such property which when added to all other property (whether probate or nonprobate) passing or which has passed to my wife and which is includable in determining the "marital deduction" under the federal estate tax statutes in effect on the date of my death, will make *a total amount equal in value to the maximum "marital deduction" available for federal estate tax purposes* under the law in effect on the date of my death.

*Id.* at 779. (Emphasis in *First Trust*.) The court concluded that the language of the trust demonstrated that the testator intended to "shift the inheritance tax burden from his widow to his estate," *id.* at 782, and that, because such a shift in tax burden is permissible under Minnesota law, the state inheritance taxes were not chargeable to the widow's share of the estate so as to decrease the amount of the marital deduction, *id.* at 783.

In *Estate of Haskell v. Commissioner*, 58 T.C. 197, 200 (1972), *aff'd mem.*, 485 F.2d 679 (3d Cir.1973), the Tax Court construed a will which directed the establishment of a trust for the benefit of testator's wife in "an amount equal to the estate tax marital deduction," 58 T.C. at 198. The court held that because "New Jersey courts recognize that a testator may shift the burden of the transfer [inheritance] tax from the beneficiary to the estate," and because the language of the will indicated an intention that the "executors and executrix ... transfer an amount not only sufficient to constitute one-half of the adjusted gross estate, but in addition an amount necessary to pay the transfer tax," *id.* at 200, the marital deduction "should not be reduced by reason of the New Jersey transfer inheritance tax," *id.* at 201.

By contrast, the will in the case at bar contains no arguably inconsistent provision for the payment of inheritance taxes.

---

the payment obligation for inheritance taxes, the court viewed the latter intent as being so unmistakable as to require that the tax apportionment provision "yield to the extent necessary to permit the achievement of the dominant tax goal of the will." 316 N.E.2d at 737.

No Maine case has considered whether the type of provision used in the codicil in this case would effectively shift the inheritance tax burden from the marital gift under 36 M.R.S.A. § 3582. But based on the reasoning in *Putnam, First Trust Co.* and *Estate of Haskell,* cases involving will provisions similar or identical to the one in the case at bar, the court is satisfied that the Maine Supreme Judicial Court would hold that the intent of this testator was to minimize the estate tax burden on the estate by shifting the inheritance tax burden away from the marital gift, thereby maximizing the marital deduction.

The intention to minimize federal estate taxes is further evidenced by the testator's disposition of the entire estate through a marital gift and a residuary trust, with his *wife* as the *sole* beneficiary. Such a plan serves to minimize the federal estate tax burden on testator's estate as well as that upon his wife's estate at her death,[5] while providing his wife with the benefit of almost all of the estate during her lifetime. Where the entire will shows "an intent to leave as much as possible to the widow with a minimum estate tax liability" the will should be construed to give effect to that intent. *See Estate of Weeks,* 462 A.2d 44, 48 (Me.1983).

Defendant argues that the marital gift of an amount "equal [to] the maximum marital deduction allowable in determining the Federal Estate Tax imposed upon my estate" is equivalent to a gift of 50 percent of the adjusted gross estate—the maximum marital deduction permitted under 26 U.S.C. § 2056(c)(1)(A)—and does not "provide" for any shift in the inheritance tax burden. Therefore, the actual marital deduction allowed the estate is 50 percent of the adjusted gross estate, minus the inheritance tax on that portion of the estate.

Defendant points to case law holding that the inheritance tax was to be paid from the marital gift, thereby diminishing the amount of the marital gift to be considered for the marital deduction. However, the wills in those cases did not provide for marital gifts equal to the "maximum marital deduction," but, rather, specified marital gifts consisting of a fixed fractional share or percentage of the estate. *Estate of Wycoff v. Commissioner,* 506 F.2d 1144 (10th Cir.1974) [marital trust of "an amount equal to fifty percent (50%) of the value of my adjusted gross estate" ], *cert. denied sub nom. Zions First National Bank v. Commissioner,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975);[6] *Thayn v. United States,* 386 F.Supp. 245 (D.Utah 1974) [marital gift of "one-half of ... remainder of my estate"]; *Boston Safe Deposit and Trust Co. v. Commissioner,* 345 F.2d 625 (1st Cir.1965) (applying Mass. law pre-*Putnam* ) [marital gift of property "qualifying for marital deduction" in a total amount "equal to one-half the value of donor's 'adjusted gross estate' " ]; *Davis v. United States,* 256 F.Supp. 796 (D.N.D.1966) ["one-half interest in and to the residue" ]; *In re Estate of Bauknecht,* 49 Wisc.2d 392, 182 N.W.2d 238 (1971) [trust in an amount of property eligible for marital deduction "equal to 50 percent of my adjusted gross estate ..." ]; *In re Estate of McCoy,* 126 Vt. 28, 220 A.2d 469, 471 (1966) ["fifty percent (50%)" of the residue].

Inasmuch as the cases relied on by defendant all involved marital gifts of a fixed portion of the estate, without any controlling reference to the "maximum marital deduction" goal, it is not surprising that the courts refused to read into those gifts an intent to maximize the marital deduction by shifting the inheritance tax burden. A

---

**5.** As was recognized in *Estate of Weeks,* 462 A.2d 44, 48 (Me.1983), the practice of bequeathing "an amount equal to the maximum marital deduction" and placing the remainder in trust for the surviving spouse for life was a common tax-avoidance scheme prior to the Economic Recovery Tax Act of 1981.

**6.** The *Wycoff* will also expressly gave the executor authority to use marital trust assets to pay state death taxes, a provision which the court found to be "out of harmony with the notion that the decedent firmly directed the executor to pay taxes out of funds other than marital ones so as in all circumstances to secure the greatest possible marital deduction." 506 F.2d at 1150.

will providing for a marital gift of an amount equal to the maximum marital deduction not only shows an intent to make a marital gift of 50 percent of the adjusted gross estate—which could be accomplished simply by directing a gift of that size—but *also* an intent not to restrict the size of the marital gift to any percentage or portion of the estate.[7]

Finally, defendant argues that Maine case law contemplates that an intention to shift the inheritance tax burden to the residuary portion of the estate must be "clearly expressed." *See Merry v. Lebel,* 443 A.2d 579, 580 (Me.1982). Since the *Merry* court *did* find a "clear expression" of such intent, there is no indication in that case as to what sort of expression of intent might fall short of the "clear expression" standard. The introductory clause in the *Merry* will provided for the disposition of the estate "after the payment of [expenses] and all estate, inheritance, succession and all other such death taxes due." Although there was no explicit language directing the shifting of any tax burden, the court held that the tax clause "could hardly be clearer in expressing the testator's intent to charge his estate, rather than his specific legatees, with the inheritance tax." *Id.*

Just as in *Merry,* the will in this case does not specifically provide for the shifting of the inheritance tax burden. However, as recognized by other courts which have considered similar language, the marital gift of an amount which "will equal the maximum marital deduction allowable" demonstrates a clear intent to shift the inheritance tax burden so as to maximize the marital deduction available to the estate. "Since testators are presumed to know the applicable law," *Merry,* 443 A.2d at 580, and since the maximum marital deduction of 50 percent of the adjusted

gross estate would not be allowable unless the inheritance tax burden were shifted from the marital gift to the residuary estate, this marital gift provision necessarily includes an implicit direction to shift the tax burden accordingly.[8]

Although ordinarily the applicable Maine inheritance tax must be deducted from the marital gift itself, *see* 36 M.R.S.A. § 3582, this testator "otherwise provided" by giving his surviving spouse an amount equal to "the maximum marital deduction allowable," rather than a gift of a specific amount, portion or percentage of the estate. In calculating the marital deduction to be allowed the estate, the IRS improperly reduced the value of the interest passing to the surviving spouse by the amount of the Maine inheritance tax attributable to that portion of the estate. The result was a federal estate tax overcharge of $78,900, which the estate paid.

There being no genuine issue of material fact and plaintiffs being entitled to judgment as a matter of law, it is

*ORDERED* that plaintiffs' motion for summary judgment be and it is *GRANTED,* and that defendant's motion for summary judgment be and it is *DENIED.*

The Clerk is directed to enter judgment in favor of plaintiff and against defendant in the amount of $78,900, plus costs and interest as provided under 28 U.S.C. §§ 2411 & 2412(a).

SO ORDERED.

---

7. To be sure, "50 percent of the value of the adjusted gross estate" is the statutory ceiling on the marital deduction permitted this estate. *See* 26 U.S.C. § 2056(c)(1)(A). But the maximum marital deduction will not be obtained, unless, in addition to one-half of the estate, the will "gives" the surviving spouse relief from the otherwise applicable inheritance tax by shifting

that tax to the portion of the estate not included in the marital gift.

8. Case law in 1980 (when the codicil was executed), including the case law of Massachusetts, where the codicil was executed, strongly suggested that the language used here was sufficient to effect a shift in the inheritance tax burden.