Probate Court, Carroll County
No. 7873

*In re* ESTATE OF ALICE BEMIS THOMPSON

May 17, 1978

*Cooper, Hall & Walker*, of Rochester (*C. Russell Shillaber* orally), for the executors.

BATCHELDER, J. (By special assignment pursuant to RSA 490:3.) On petition by the executors of the estate of Alice Thompson, the Probate Court, Carroll County (*Shea*, J.) certified the following questions of law to this court pursuant to RSA 547:30:

> 1. Where does the burden for payment of death taxes fall when the direction of the testatrix to pay such taxes from the residue of the estate partially fails?
>
> 2. If the death tax is to be apportioned, may apportionment be enforced against an intervivos trust by way of in personam jurisdiction over one of the three trustees when the trust corpus and the two remaining trustees are located in Massachusetts?

Alice B. Thompson died testate on November 17, 1972. Several months before her death Mrs. Thompson, aware that she was suffering from terminal cancer, executed three documents: a will, a trust, and a trust amendment.

Shortly before her death, Mrs. Thompson transferred substantially all her intangible personal property, valued at $4,072,707 for federal estate tax purposes, to the trust. Mrs. Thompson's will disposed of personal effects and tangible personal property to her husband and children. She then gave legacies totalling $57,000 to named individuals, $2,000 to each of two named charities, and a legacy to Planned Parenthood equal to two percent of the adjusted gross estate ($90,834 as finally determined for federal estate tax purposes). The will directed that death taxes be paid out of the residue and not be apportioned, as follows:

> I direct that all legacy, succession, inheritance and estate taxes or taxes of that nature which may be payable by reason of my death be paid out of the residue of my estate as expenses of the administration thereof and not be apportioned, and I give to my executors full power and authority to pay, compromise and settle, or otherwise adjust any of such taxes. . . .

On audit of the federal estate return, the Internal Revenue Service disallowed the charitable deduction claimed for the three charitable gifts under the will. This resulted in total death taxes for the estate of $856,516. The charitable deduction was disallowed under section 2055(c) of the Internal Revenue Code on the ground that payment

of the death taxes from the residue as directed would not only extinguish the residue but also the entire probate estate of $256,793, thereby abating the charitable bequests, and making payment of them on the date of death uncertain.

New Hampshire is among the States that have adopted the Uniform Estate Tax Apportionment Act. Section 2 of this Act provides that death taxes shall be apportioned among all persons interested in the estate "[u]nless the will otherwise provides." RSA 88-A:2. There is no question that Mrs. Thompson's will directed that death taxes be charged against the residue of the estate and not be apportioned, so that had the residue been sufficient to cover the tax liability the statute would not require apportionment. *In re Robbins Estate*, 116 N.H. 248, 356 A.2d 679 (1976); *In re Crozier Estate*, 105 N.H. 440, 201 A.2d 895 (1964); *In re Whitelaw Estate*, 104 N.H. 307, 185 A.2d 65 (1962). In the instant case, however, because the residue is inadequate to pay the entire amount of death taxes, the testatrix' direction cannot be fully carried out, and the question arises whether the apportionment statute applies to the extent that the residue is insufficient to pay the taxes.

"If there is a tentative residuary estate before taxes, that is, an amount over and above funeral expenses, debts, administration expenses, and preresiduary legacies and devises, but not enough to bear in full the tax burden which has been imposed upon the residue, there is only a partial failure of the direction to pay taxes [from the residue], and such amount should be used to pay taxes in accordance with the tax clause, and the balance of the taxes falls upon the persons and property liable in the absence of a tax clause. Thus, where the residuary estate is not adequate to pay the full amount of the tax burden imposed upon it, the deficiency cannot be met from other legacies, and the estate tax, to the extent it exceeds the residuary estate, must be equitably apportioned in accordance with the apportionment statute." Annot., *Construction and Effect of Will Provisions Expressly Relating to the Burden of Estate or Inheritance Taxes*, 69 A.L.R.3d 122, § 43[a] at 453–54 (1976) (footnotes omitted). The view that taxes must be apportioned under the statute to the extent that the testator's direction to pay taxes out of the residue fails is generally accepted. The cases are collected in Annots., 69 A.L.R.3d 122, § 43[a] at 452–60 (1976), 71 A.L.R.3d 247, § 21 at 338–43 (1976), and 37 A.L.R.2d 199, § 11 at 234–37 (1954). This court, however, has sought foremost to carry out the testator's plan as to the incidence of federal and State taxes, and has never been unnecessarily literal in its construction of the testator's

purpose. *In re Robbins Estate*, 116 N.H. at 250, 356 A.2d at 681; *In re Whitelaw Estate*, 104 N.H. at 308, 185 A.2d at 66. In the *Whitelaw* case, we found that the testator's purpose in directing that taxes be paid from the residue was to protect the specific legatees from bearing any tax burden, and therefore held that if the residue was insufficient to pay the federal estate tax the balance should be paid from the single general legacy before the specific legacies were charged with the tax. Here, however, because the vast bulk of the taxable estate consists of nonprobate property, all legacies will abate entirely if the probate estate is charged with the burden of all death taxes. If the testatrix' direction that taxes be paid from the residue and not be apportioned were construed as ousting the apportionment statute entirely, a clause intended to spare the legatees from suffering any deduction in their legacies would operate to deprive them of their legacies entirely. We do not think that this construction accurately reflects the testatrix' intent, and therefore hold that the apportionment statute applies to the extent that the residue is insufficient to pay the death taxes. *See In re Estate of Dumas*, 117 N.H. 909, 379 A.2d 836 (1977).

The next question is whether the decree of apportionment can be enforced against the trust when two of the three trustees and the trust corpus are located in Massachusetts, and the trust provides that it shall be governed by Massachusetts law. The third trustee resides in New Hampshire and is subject to personal jurisdiction in this State.

Our apportionment statute requires apportionment among all persons interested in the estate, unless the will otherwise provides, notwithstanding that "persons interested in the estate" might be nonresidents or that some of the taxable property may be located outside the State. *See* RSA 88-A:1(a), (c); RSA 88-A:8. In the instant case, one of the cotrustees and primary beneficiaries of the trust is subject to the personal jurisdiction of our courts and may therefore be bound by a decree of apportionment. Any liability imposed by the New Hampshire Apportionment Act on the cotrustees would entitle the trustee to reimbursement from the trust for liabilities properly incurred or to exoneration from trust property in satisfaction of the tax liability. *Turner v. Morson*, 316 Mass. 678, 57 N.E.2d 18 (1944); 3 W. Scott, Trusts, § 244 (1967). We therefore think that the second question should be answered "Yes."

*Remanded.*

LAMPRON and GRIMES, JJ., did not sit; LOUGHLIN, J. sat by special assignment pursuant to RSA 490:3; the others concurred.